1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ERNEST KISH, JR.,

                              Plaintiff,

        v.

MICHAEL J. ASTRUE. Commissioner of
Social Security,

                              Defendant.

Case No. 3:11-cv-06045-KLS

ORDER AFFIRMING DEFENDANT'S
DECISION TO DENY BENEFITS

        Plaintiff has brought this matter for judicial review of defendant's denial of his

application for disability insurance benefits.  Pursuant to 28 U.S.C. § 636(c), Federal Rule of

Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard

by the undersigned Magistrate Judge.  After reviewing the parties' briefs and the remaining

record, the Court hereby finds that for the reasons set forth below, defendant's decision to deny

benefits should be affirmed.

FACTUAL AND PROCEDURAL HISTORY

        On October 11, 2007, plaintiff filed an application for disability insurance benefits,

alleging disability as of April 1, 2004, due to a back injury.  See Administrative Record ("AR")

20, 143.  His application was denied upon initial administrative review on March 28, 2008, and

on reconsideration on June 12, 2008.  See AR 20, 76, 81.  A hearing was held before an

administrative law judge ("ALJ") on February 17, 2010, at which plaintiff, represented by

counsel, appeared and testified, as did a vocational expert. See AR 36-69.

ORDER - 1

On April 8, 2010, the ALJ issued a decision in which plaintiff was determined to be not disabled. See AR 20-30.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on December 12, 2011, making the ALJ's decision defendant's final decision. See AR 1; see also 20 C.F.R. § 404.981.  On December 22, 2011, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. See ECF #1.  The administrative record was filed with the Court on March 6, 2012. See ECF #11.  The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the ALJ's decision should be reversed and remanded to defendant for an award of benefits, or in the alternative for further administrative proceedings, because the ALJ erred: (1) in finding plaintiff did not have a "severe" mental impairment; (2) in discounting his credibility; (3) assessing his residual functional capacity; and (4) in not posing a complete hypothetical question to the vocational expert at the hearing.  For the reasons set forth below, however, the Court disagrees that the ALJ erred in determining plaintiff to be not disabled, and therefore finds that defendant's decision should be affirmed.

<u>DISCUSSION</u>

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla but less than a preponderance. See Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991).  If the evidence admits of more than one rational

ORDER - 2

interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.     Plaintiff's Date Last Insured

To be entitled to disability insurance benefits, plaintiff "must establish that [his] disability existed on or before" the date his insured status expired. Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998); see also Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1460 (9th Cir. 1995) (Social Security statutory scheme requires disability to be continuously disabling from time of onset during insured status to time of application for benefits, if individual applies for benefits for current disability after expiration of insured status).  Plaintiff's date last insured was December 31, 2008. See AR 22.  To be entitled to disability insurance benefits, therefore, plaintiff must establish he was disabled prior to or as of that date. Tidwell, 161 F.3d at 601.

II.    The ALJ's Step Two Determination

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520.  If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id.  At step two of the evaluation process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 404.1520.  An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c); see also Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1.  Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b); SSR 85- 28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." SSR 85-28, 1985 WL

ORDER - 3

56856 *3; see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988).  Plaintiff has the burden of proving that his "impairments or their symptoms affect her [his] ability to perform basic work activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell, 161 F.3d at 601.  The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims. See Smolen, 80 F.3d at 1290.

The ALJ in this case found that "[t]he medical evidence of record d[id] not support the existence of a 'severe' mental impairment on or before the date last insured." AR 22.  Plaintiff argues the evidence in the record supports a finding that his depression is a severe impairment. The Court disagrees.  Plaintiff asserts his depression is "well documented in the record." ECF #13, p. 8.  The evidence he points to, however, are his own self-reports. See AR 156, 163, 400, 405, 454).  But while the ALJ must take into account a claimant's pain and other symptoms in conducting the step two analysis (see 20 C.F.R. § 404.1529), the severity determination is made solely on the basis of the objective medical evidence in the record:

> A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities; thus, an assessment of function is inherent in the medical evaluation process itself.  *At the second step of sequential evaluation, then, medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities*. . . .

SSR 85-28, 1985 WL 56856 *4 (emphasis added).  The record, though, is devoid of objective medical evidence that plaintiff was diagnosed with depression – let alone found to have work-related limitations indicating more than a minimal impact in his ability to perform basic work activities stemming therefrom – on or before his date last insured.

Plaintiff argues the ALJ erred in rejecting the opinion of Jeffrey D. Hart, M.D., who

ORDER - 4

examined plaintiff in late January 2010, apparently in relation to a claim plaintiff had with the

Washington State Department of Labor and Industries ("L&I"). See AR 453-57. Dr. Hart

diagnosed him with the following: a pain disorder with both psychological factors and a general

medical condition; a generalized anxiety disorder; dysthymia versus "major depression single

episode without psychotic features, chronic"; and an attention deficit hyperactivity disorder,

combined type. AR 456. Dr. Hart also gave plaintiff a global assessment of functioning ("GAF")

score of 45 to 50.[1] See id. He further opined in relevant part:

> . . . The patient has a preexisting condition of attention deficit hyperactivity
> disorder, combined type, which will complication [sic] any type of vocational
> retraining effort and given the patient's problems with chronic pain following
> his industrial injury will cause a constant and ongoing distraction for him.
> The patient, in addition, has suffered from depression and anxiety that are
> casually related to his industrial injury. The patient, in my opinion, is not
> gainfully employable. If there is no further medical, diagnostic, or surgical
> intervention that can [be] brought to bear to improve his physical capacity and
> reduce his experience of pain I believe that even though psychiatric treatment
> could be beneficial it would not be beneficial enough to allow for this
> individual to return to gainful employment on a regular basis. This patient if
> seen as medically fixed and stable, in my opinion, should be placed on
> pension. I would myself recommend that a separate treatment order be
> allowed for this patient given that there is some suicidal ideation and it is
> likely as time goes on that his pain problems will worsen without psychiatric
> treatment, there is the potential that this individual will become a danger to
> himself and indirectly cause harm to other people. . . .

AR 457.

The ALJ is responsible for determining credibility and resolving ambiguities and

conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).

---

[1] A GAF score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [a claimant's] overall level of functioning.'" Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007) (citation omitted). It is "relevant evidence" of the claimant's ability to function mentally. England v. Astrue, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007). "A GAF score of 41-50 indicates '[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning,' such as an inability to keep a job." Pisciotta, 500 F.3d at 1076 n.1 (10th Cir. 2007) (quoting Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) ("DSM-IV-TR") at 34); see also Cox v. Astrue, 495 F.3d 614, 620 n.5 (8th Cir. 2007) (GAF score in forties may be associated with serious impairment in occupational functioning); England, 490 F.3d at 1023, n.8 (8th Cir. 2007) (GAF score of 50 reflects serious limitations in general ability to perform basic tasks of daily life).

ORDER - 5

Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

ORDER - 6

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

The ALJ addressed Dr. Hart's opinion as follows:

> Although offered well after the date last insured of December 31, 2008, I also considered the January 2010 psychological evaluation by Jeffrey Hart, M.D. (Exhibit 22F).  However, I give this evaluation little to no weight.  Dr. Hart's conclusions are inconsistent with medical evidence of record and quite conclusory, providing very little explanation of the evidence relied on in forming his opinion.  He evidently relied quite heavily, if not entirely, on the claimant's subjective report of pain and symptoms and seemed to uncritically accept as true most, if not all, of what he reported.  Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints.  The claimant's subjective reports are out of proportion to the objective medical evidence and therefore Dr. Hart's reliance on them renders his evaluation less persuasive.  Also, the claimant underwent this evaluation not in an attempt to seek treatment for symptoms, but rather, through a referral by Counsel in connection with an effort to generate evidence for his L&I claim and the current appeal.  Further, the doctor was presumably paid for the report.  Although such evidence is certainly legitimate and deserves due consideration, the context in which it was produced cannot be entirely ignored.  As such, I give this evaluation little to no weight and find that the claimant did not have a mental impairment other than his chronic pain, which is in connection to his physical impairment.

AR 27-28.  While, as explained below, not all of the ALJ's stated reasons for rejecting Dr. Hart's opinion are valid, overall the ALJ did not err in giving it little to no weight.

ORDER - 7

First, as the ALJ noted, Dr. Hart's opinion was provided "well after the date last insured." AR 27.  Plaintiff argues that opinion is relevant because it relates "to the entire period at issue, drawing on the plaintiff's self-reporting to other medical providers in the relevant time-frame." ECF #15, p.4.  But, as clearly can be seen from the language Dr. Hart used in his above opinion, he was talking about plaintiff's ability to *currently* function – that is, in late January 2010, more than a year after the date last insured in this case – and, indeed, he offered no such opinion as to the actual relevant time period at issue here, April 1, 2004, through December 31, 2008.  As such, the ALJ did not err in rejecting Dr. Hart's opinion on this basis.

The ALJ also did not err in rejecting that opinion on the basis that it was inconsistent with the other medical evidence of record.  Although there is one other examining medical source opinion in the record that found plaintiff to be significantly impaired in terms of his ability to work due at least in part to "psychological factors" (absent "[t]reatment in a chronic pain management clinic") in early October 2009, that opinion too was offered well after the date last insured in this case.  See AR 475.  The only other evidence of a mental impairment in the record in regard to the relevant time period consists, as discussed above, of plaintiff's self-reports.  See AR 156, 163, 400, 405, 454.  Indeed, Louis Frank Kretschmer, M.D., to whom plaintiff points as having noted in early October 2006, that he had undergone a period of depression following his second operation and had reported experiencing anxiety (see AR 400, 405), provided no objective findings concerning depression or anxiety or diagnoses thereof in his evaluation report (see AR 399-410).

The undersigned agrees with plaintiff that the ALJ erred in rejecting Dr. Hart's opinion on the basis that Dr. Hart provided "very little explanation of the evidence relied on in forming his opinion," "evidently relied quite heavily, if not entirely, on [plaintiff]'s subjective report of

pain and symptoms and seemed to uncritically accept as true most, if not all, of what [plaintiff] reported." AR 27.  In addition to obtaining plaintiff's history and self-report of symptoms, Dr. Hart performed psychological testing and conducted a mental status examination. See AR 453-56; see also Clester v. Apfel, 70 F.Supp.2d 985, 990 (S.D. Iowa 1999) ("The results of a mental status examination provide the basis for a diagnostic impression of a psychiatric disorder, just as the results of a physical examination provide the basis for the diagnosis of a physical illness or injury.").  It is not at all clear, furthermore, that Dr. Hart relied "quite heavily," let alone "almost entirely" on plaintiff's subjective report in forming his opinion.

The ALJ also erred in rejecting Dr. Hart's opinion because it was not for the purpose of "seek[ing] treatment for symptoms, but rather [it was obtained] through a referral by Counsel in connection with an effort to generate evidence for [plaintiff's] L&I claim" and the administrative appeal of the denial of his disability benefits application. AR 27.  But absent "evidence of actual improprieties," the purpose for which a medical report is obtained is not a legitimate basis for rejecting it. Lester, 81 F.3d 821, 832 (9th Cir. 1996) (physician's findings entitled to no less weight when examination is procured by claimant than when it is obtained by defendant).  The Court notes, furthermore, that defendant himself has on a number of occasions based adverse disability decisions at least in part on medical evaluation reports obtained for the sole purpose of determining a claimant's mental and/or physical work-related limitations.  That being said, as the ALJ did provide other, valid reasons for rejecting Dr. Hart's opinion, the Court finds the ALJ did not err overall in doing so.[2]

---

[2] Plaintiff also argues that because there is evidence that depression existed prior to the hearing, the ALJ should have further developed the record in regard thereto by obtaining a consultative examination.  The ALJ does have the duty "to fully and fairly develop the record and to assure that the claimant's interests are considered." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations omitted).  It is only where the record contains "[a]mbiguous evidence," however, or the ALJ finds "the record is inadequate to allow for proper evaluation of the evidence," that the ALJ's duty to "conduct an appropriate inquiry" is triggered. Id. (citations omitted); see also Mayes v. Massanari,

ORDER - 9

III.    The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at 642.  The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579.  That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan , 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted).  The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834.  The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen, 80 F.3d at 1284.  The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

---

276 F.3d 453, 459 (9th Cir. 2001).  But as discussed above, there is no objective medical evidence indicating there was a severe mental health impairment prior to or as of plaintiff's date last insured, and thus there is no ambiguity in the record in that regard.  Contrary to plaintiff's contention, furthermore, such lack of objective medical evidence does not indicate the presence of ambiguity requiring investigation, but rather merely establishes that he has failed to meet his burden of proof at step two.  In addition, the ALJ did not find that the record was inadequate to allow for a proper evaluation of the evidence.

ORDER - 10

In this case, the ALJ discounted plaintiff's credibility in part because "the overall medical evidence of record d[id] not support [his] allegations of debilitating symptoms or limitations." AR 25.  A determination that a claimant's subjective complaints are "inconsistent with clinical observations" can satisfy the clear and convincing requirement. Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998).  As discussed above, and further below, the ALJ did not err in evaluating the medical evidence in the record, and therefore also did not err in failing to find any greater functional limitations than he did.  Accordingly, this was a proper basis upon which to discount plaintiff's credibility.

The ALJ also discounted plaintiff's credibility for the following reasons:

> . . . [Plaintiff] underwent a series of cervical surgeries, which certainly suggests that his symptoms were genuine.  However, the record reflects that the surgeries were generally successful in relieving the objective symptoms (Exhibits 4F, 15F, 17F, and 18F).  Also, the claimant has been prescribed and taken appropriate medications for his impairments and the medical records reveal that the medications have been relatively effective in controlling his objective symptoms. . . .

AR 25.  The ALJ may discount a claimant's credibility on the basis of medical improvement. See Morgan, 169 F.3d at 599; Tidwell, 161 F.3d at 601.  The record, however, indicates that although plaintiff apparently obtained good relief from surgery at least temporarily – even improving to the point where his treating physician recommended participation in full vocational rehabilitation (see AR 238, 382) – such relief appears not to have been long-lasting, requiring more than one surgical procedure and resulting in reported continuing symptoms (see AR 243, 308-09, 311, 318, 320, 323-25, 328-29, 400-01, 447-48, 467-69). The substantial evidence, therefore, does not support this reason for discounting plaintiff's credibility.

The ALJ next discounted plaintiff's credibility on the following basis:

> Although the claimant has described daily activities which are fairly limited, two factors weigh against considering these allegations as strong evidence in

favor of finding him disabled through the date last insured.  First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty.  Second, even if his daily activities were as limited as he alleged, it is difficult to attribute that degree of limitation to his medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision.  Overall, the claimant's reported limited daily activities are considered to be outweighed by the other factors discussed in this decision.

Overall, the claimant's activities of daily living [and] social functioning are not limited to the extent one would expect given his complaints of disabling symptoms and limitations.  He is able to perform his own self-care and basic activities of daily living.  In January 2004 he stated that he needed some assistance with household chores (Exhibit 2E).  However, in March 2008 he stated that he had "no problem performing household chores" which included cooking, shopping, doing laundry, and performing light cleaning and household repairs (Exhibits 7E and 5F, p. 2).  He stated that his only difficulty was performing activities that involved looking up with his neck (such as changing a light bulb or shaving his neck).  Additionally, he reads, watches television, runs errands, and enjoys playing cards and spending time with a few friends (Exhibits 2E and 7E).

AR 25-26.  The Ninth Circuit has recognized "two grounds for using daily activities to form the basis of an adverse credibility determination."  Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007).  First, such activities can "meet the threshold for transferable work skills."  Id.  Thus, a claimant's credibility may be discounted if he or she "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting."  Smolen, 80 F.3d at 1284 n.7.

The claimant, however, need not be "utterly incapacitated" to be eligible for disability benefits, and "many home activities may not be easily transferable to a work environment."  Id. (finding reading and watching television to be such undemanding activities that they cannot be said to bear meaningful relationship to activities of workplace).  In addition, the Ninth Circuit has "recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations."  Reddick, 157 F.3d at 722.  Under the second ground in Orn,

ORDER - 12

the claimant's activities of daily living can "contradict his [or her] other testimony." 495 F.3d at

639.

The record fails to show that plaintiff spent a substantial part of his day performing the

above tasks or that he performed them in a manner transferable to a work setting. See AR 44-46,

53-54, 130-32, 150-57, 329, 454.  The level of daily activities plaintiff has reported, furthermore,

does not necessarily contradict his testimony regarding his functional capabilities.  The ALJ,

however, went on to further find as follows:

> . . . As mentioned earlier, the record reflects that [t]he claimant returned to
> college.  He stated that during [sic] time, he woke up every morning at 5:30
> a.m. and attended school from 7:00 a.m. to 2:30 or 3:00 p.m. in the afternoon,
> later performing homework (Exhibit 5F, p. 2).  Although such activity does
> not constitute work activity, it does indicate that the claimant's daily activities
> have, at least at times, been greater than he has generally reported.  It is
> apparent that the claimant is engaging in a normal level of daily activity and
> work-like activities.

AR 26.  Plaintiff's ability to attend school on what is nearly a full-time basis, does contradict his

allegation of disabling functional limitations.

The ALJ also discounted plaintiff's credibility because he "admitted that he lost his job

due to 'attendance problems' not due to the inability to perform the job." AR 26 (citing AR 447,

468).  But the evidence cited by the ALJ to support this interpretation of the reason plaintiff lost

his job indicates otherwise:

> Following [his mid-July 2001] surgery and physical therapy he did attempt to
> return to work around 2002, but was only able to perform modified duty on a
> part time basis.  He was in a great deal of pain and had difficulty making it
> work on a consistent basis and so was eventually fired for poor attendance by
> his employer of injury . . .

AR 447.  The ALJ erred as well in discounting plaintiff's credibility for the following reasons:

> . . . [Plaintiff] has pursued a pension through his L&I claim and ultimately
> settled for a monetary settlement.  As an issue of secondary gain, it appears
> that the claimant is seeking additional benefits to use as an income without the

ORDER - 13

burden of having to work while he attends college . . . Thus, his financial
incentive to over-report or exaggerate his difficulties is high pending the
outcome of this appeal.

Another factor influencing the conclusions reached in this decision is the
claimant's generally unpersuasive appearance and demeanor while testifying
at the hearing.  He did not betray significant pain or discomfort during the
hearing.  While the hearing was short-lived and cannot be considered a
conclusive indicator of the claimant's overall level of pain on a day-to-day
basis, the apparent lack of discomfort during the hearing is given some weight
in reaching the conclusion regarding the credibility of his allegations of pain,
limitations, and residual functional capacity. . . .

AR 26.  It is true that the ALJ may consider a claimant's motivation and the issue of secondary

gain in rejecting his or her symptom testimony. See Tidwell, 161 F.3d at 602; Matney on Behalf

of Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992).  But the mere fact that plaintiff has

chosen to pursue an L&I pension is hardly indicative of a lack of motivation on his part, nor does

it necessarily constitute evidence of any secondary gain issue without further evidence of actual

inappropriate behavior in this regard.  Indeed, there is nothing in the record to suggest plaintiff is

not entitled to such a pension, should he establish eligibility therefor.

An ALJ also may rely on a claimant's demeanor at the hearing as a basis for discrediting

his or her testimony. See Thomas v. Barnhart, 278 F.3d 947, 960 (9th Cir. 2002); Matney v.

Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992).  Further, inclusion of personal observations of the

claimant in the ALJ's findings "does not render the decision improper." Nyman v. Heckler, 779

F.2d 528, 531 (9th Cir. 1986).  The ALJ may not reject a claimant's subjective complaints,

though, "solely on the basis of" personal observations. SSR 95-5p, 1995 WL 670415 *2.  But as

plaintiff points out, contrary to the ALJ's statement regarding the "apparent lack of discomfort

during" (AR 26), the hearing transcript reveals at least two instances of plaintiff requesting to

stand up, at least one of which seemingly was specifically due to discomfort with sitting (see AR

49, 55).  As such, this too was not a clear and convincing reason.

ORDER - 14

On the other hand, the ALJ did not err in discounting plaintiff's credibility on the

following basis:

> . . . I note that following each of his surgeries and recovery periods, he was
> medically released to return to light to medium work (Exhibits 17E, pp. 15-16,
> 4F, 12F, and 17F).  However, he has instead decided to return to school,
> focusing on a vocational technical program.  This implies that he has chosen
> not to find appropriate work within his residual functional capacity and, thus,
> the reason for his continued unemployment is not solely the alleged
> impairment.  This is supported by the fact that the claimant paid for the
> courses himself when L&I would no longer cover his college expenses
> (Exhibit 25F, p. 8). . . .

AR 26.  Plaintiff argues the record shows he decided to extend his coursework another three

months on his own in order to complete a full year of retraining, so that he could make himself

more employable.  See ECF #13, pp. 19-20; see also AR 468.  But while plaintiff cannot be

faulted for wanting to improve his employment prospects, disability benefits are awarded for the

inability to perform *any* type of work that is not precluded by the claimant's residual functional

capacity, age, education and relevant work history during the pertinent time period, regardless of

whether other reasons not related to the above factors might make the claimant less employable.[3]

As such, it was not remiss for the ALJ to find that the record showed plaintiff chose not to find

work within the level of work category to which he was released as noted above, and that such a

choice on his part adversely impacted his credibility in regard to his allegations that he could not

---

[3] As the Social Security Act itself states:

> An individual shall be determined to be under a disability only if his physical or mental
> impairment or impairments are of such severity that he is not only unable to do his previous
> work but cannot, considering his age, education, and work experience, engage in any other
> kind of substantial gainful work which exists in the national economy, regardless of whether
> such work exists in the immediate area in which he lives, or whether a specific job vacancy
> exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).  Thus, Congress "explicitly determined that it is the existence of jobs that is essential,"
and that the ALJ "is not required to consider the hiring practices of employers, or whether a claimant could actually
obtain work if he applied for it.  Martinez v. Heckler, 807 F.2d 771, 774-75 (9th Cir. 1987) ("This circuit has
consistently held . . . that the definition of disability is based upon the existence of jobs in significant numbers in the
national economy.").

ORDER - 15

work, even if pursuing further education was more desirable to plaintiff.

As discussed above, not all of the ALJ's stated reasons for discounting plaintiff's credibility were proper.   Nevertheless, this does not render the adverse credibility determination invalid in this case, as the ALJ did provide other, valid reasons for finding plaintiff to be less than fully credible, which are supported by substantial evidence in the record. See Tonapetyan, 242 F.3d at 1148; see also Bray v. Commissioner of Social Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (while ALJ relied on improper reason for discounting claimant's credibility, he presented other valid, independent bases for doing so, each with "ample support in the record"). Accordingly, the ALJ's decision to discount plaintiff's credibility in this case on the whole was not improper and will not be overturned.

IV.   The ALJ's Assessment of Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.  It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id.  However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id.  In assessing a claimant's RFC, the ALJ also is required to discuss why the

claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

The ALJ in this case assessed plaintiff with the residual functional capacity:

> **. . . to perform light work . . . Specifically, he could lift and carry 20 pounds occasionally, lift and carry 10 pounds frequently, stand and walk about 6 hours in an 8-hour workday, and sit about 6 hours in an 8-hour workday. He could occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs. He was restricted from overhead reaching bilaterally and climbing ladders, ropes, and scaffolding. He needed to avoid concentrated exposure to vibration and hazards such as working around machinery or heights.**

AR 23 (emphasis in original). Plaintiff argues the ALJ erred in assessing the above RFC by not fully taking into consideration his pain, fatigue or depression. But plaintiff has failed to point out with any specificity what actual evidence of pain and fatigue show greater functional limitations than found by the ALJ. See Carmickle v. Commissioner of Social Sec. Admin., 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (issue not argued with specificity will not be addressed); Kim v. Kang, 154 F.3d 996, 1000 (9th Cir.1998) (matters not specifically and distinctly argued in opening brief ordinarily will not be considered). To the extent that plaintiff is relying on his own testimony and self-reporting to support his argument, the ALJ, as discussed above, did not err in finding him to be not fully credible. Nor, also as discussed above, did the ALJ err in finding plaintiff did not suffer from a severe mental impairment, including depression.

Similarly, plaintiff has failed to explain how the ALJ's reliance on the opinion that he is capable of performing light work provided by examiners at the state Disability Determination Services ("DDS") in early March 2004 (see AR 26-27, 231-37), prior to an additional surgery that was performed in early October 2005 (see AR 373-74), also calls into doubt the ALJ's residual functional capacity assessment. Specifically, plaintiff has not shown that the mere fact that he had further surgery performed resulted in greater functional limitations than found by the

ORDER - 17

DDS examiners or the ALJ in this case.

Plaintiff next takes issue with the ALJ's mentioning of a physical capacities evaluation ("PCE") that was performed in mid-March 2006, that found plaintiff could perform in essentially a light to medium work capacity. See AR 25; see also AR 200-01, 468. But the ALJ did not state he was actually relying on this PCE in assessing plaintiff's RFC. To the extent he did, however, the Court finds no error. Plaintiff argues the ALJ failed to discuss certain specific findings also mentioned in that PCE – such as plaintiff reporting having "down time of 2 hours a day" and the evaluator noting demonstration of "significant limitations" in his neck, upper back and left upper extremity – and the additional evaluator comment that it did "not appear that further therapeutic intervention would increase tolerances significantly at this time." AR 200.

As for plaintiff's self report, once more as discussed above, the ALJ did not err in finding him to be not entirely credible concerning his subjective complaints. In addition, the opinion that it did not appear that further therapeutic intervention would result in a significant increase in tolerances currently, does not by itself impose any additional work-related limitations, but rather merely indicates plaintiff likely would not progress beyond the light to medium work category at that time. Lastly, with respect to the comment regarding "significant limitations," the evaluator found plaintiff to be capable overall of performing in the light to medium work exertional range, and gave no indication that such capacity was *further* limited by those limitations.[4] Accordingly, here too the Court finds no error.

Plaintiff cites as well the following medical evidence in the record, apparently arguing –

---

[4] Plaintiff complains as well that the pages of the record cited above (see AR 200-01, 468) merely summarize what was found upon performance of the physical capacities evaluation, and that the evaluation report itself is not in the record. While this appears to be the case, plaintiff has not argued or presented any evidence to show the summary thereof that is contained in the record is inaccurate or inadequate to address the adequacy of the ALJ's inclusion of – and to the extent he did so, reliance on – it in his discussion of the medical evidence in the record.

ORDER - 18

though not specifically so stating – that such evidence also calls into question the accuracy of the ALJ's RFC assessment:

> . . . Chart notes from treating physician [Daniel G.] Nehls[, M.D.,] in December of 2005, after his last cervical surgery, indicate the plaintiff was experiencing "progressive difficulty with fine motor skills in his left hand, which is problematic for him since he is left-handed. He has chronic weakness on that side left over from the original injury." [AR] 243. In addition, Dr. David Kennedy, who evaluated the plaintiff on March 8, 2008, noted atrophy in the right pectoralis ([AR] 330) and noted he was unable to obtain reflex response in the triceps bilaterally. [AR] 331. Dr. . . . Kretschmer examined the plaintiff at the request of [L&I] on October 2, 2006, and stated he could work at the light to medium level of work, based on the check-the-box form that he completed, but noted the plaintiff had restricted range of motion and weakness of his dominant, left upper extremity. [AR] 410-411. On November 17, 2008, Dr. James Harris examined the plaintiff at the request of [L&I], and noted his "obvious triceps atrophy" on the left, decreased cervical range of motion, decreased sensation by approximately fifty percent in the left upper extremity, and markedly decreased grip strength in his left, dominant hand compared to his right. [AR] 442.

ECF #13, p. 14 (internal footnote omitted). The above chart notes from Dr. Nehls, however, do not indicate that such "progressive difficulty" resulted in actual opined work-related limitations, let alone work-related limitations that are more severe than those found by the ALJ.[5] Nor do that physician's treatment records note any such limitations. See AR 238, 253, 269, 326, 373-74, 382-84. Indeed, in early April 2006, Dr. Nehls completed a questionnaire stating he concurred with the mid-March 2006 physical capacities evaluation, which found plaintiff to be capable of performing light to medium work, and that he was "ready to begin full vocational rehabilitation" within the parameters defined by that evaluation. AR 238, 382.

As for Dr. Kretschmer, it is true that she noted plaintiff had "[r]estricted range of motion

---

[5] The same is true with respect to the notation by Dr. Kennedy. Plaintiff argues the ALJ placed undue reliance on Dr. Kennedy's opinion that he was capable of performing essentially light work (See AR 27, 328-31), because his medical specialty is not in the field of orthopedic or psychiatric impairments. It is true that more deference generally is given to the "opinion of a specialist about medical issues related to his or her area of specialty." See Benecke v. Barnhart, 379 F.3d 587, 594 n.4 (9th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(5)). But plaintiff has not argued or shown that the opinion of another medical source with the relevant specialization in this case should have been given greater deference than that of Dr. Kennedy.

ORDER - 19

1   and weakness of the left arm," but did so merely to opine that such limitations "necessitate[d] his

2   inability to return to his job at the time of injury," which fell within the heavy category of work.

3   AR 410; see also AR 28, 400.  Thus, they do not cast any doubt on Dr. Kretschmer's conclusion

4   that plaintiff could perform at the light to medium level of work. See id.  Lastly, the findings

5   from Dr. Harris do not amount to an opinion as to actual work-related limitations – and, indeed,

6   Dr. Harris assessed no such limitations – and thus they are insufficient to overturn the ALJ's

7   RFC assessment.  The same is true with regard to evidence of atrophy and loss of grip strength

8   plaintiff argues is "well-documented" in the record. ECF #13, p. 15.  That is, plaintiff points to

9   no medical source indicating such symptoms have resulted in actual work relating limitations

10  beyond those the ALJ assessed in his RFC.

11          Plaintiff further appears to challenge that assessment on the basis of a physical capacities

12  evaluation performed on January 7, 2010, by Dan Hughes, DPT, in which plaintiff was found to

13  be limited in terms of the need to take frequent breaks, move around to change positions and lay

14  down "a couple of times a day," and to "at best . . . function with hobby type sedentary work at a

15  slow pace on a part-time basis." AR 452.  In late January 2010, H. Richard Johnson, M.D., found

16  these findings to be "accurate" and thus he agreed with them. AR 458.  Although the ALJ did not

17  expressly state he was rejecting the PCE conducted by Mr. Hughes, he did find "unreliable" Dr.

18  Johnson's conclusions regarding the same, on the basis that they were not consistent with Dr.

19  Johnson's earlier opinion that "a chronic pain management clinic would address [the physical

20  features and psychological factors that rendered him unemployable at the time as also opined by

21  Dr. Johnson], allowing [plaintiff] to make sufficient progress to return to work in a light duty

22  capacity on a regular continuous basis." See AR 27, 475.  As plaintiff has not challenged this

23  finding, the Court finds no error in the ALJ rejecting Dr. Johnson's subsequent conclusions – and

ORDER - 20

therefore implicitly – the findings and opinion of Mr. Hughes. See Bayliss v. Barnhart, 427 F.3d

1211, 1216 (9th Cir. 2005) (discrepancies between medical opinion source's functional

assessment and that source's other comments regarding claimant's capabilities "is a clear and

convincing reason for not relying" on the assessment); see also Weetman v. Sullivan, 877 F.2d

20, 23 (9th Cir. 1989).

Lastly, plaintiff argues the ALJ erred in not discussing the findings and conclusions

contained in the PCE provided by Carl Gann, a certified rehabilitation counselor and vocational

consultant, in late January 2007. See AR 186-204.  The Court agrees the ALJ erred in failing to

discuss this evidence,[6] but finds such failure to be harmless. See Stout v. Commissioner, Social

Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where it is non-prejudicial

to claimant or irrelevant to ALJ's ultimate disability conclusion); see also Parra v. Astrue, 481

F.3d 742, 747 (9th Cir. 2007) (finding any error on part of ALJ would not have affected "ALJ's

ultimate decision.").  Mr. Gann confined his findings and conclusions – in which he opined that

plaintiff was not employable as of October 30, 2002, through April 19, 2005 – to a period of time

largely irrelevant to this matter, i.e., the period prior to the alleged onset date of disability of

April 1, 2004. See AR 204.

In addition, for the reasons discussed above, the ALJ did not err in determining plaintiff

had the RFC to perform light work in light of his proper evaluation of the medical evidence in

the record, which outweighs the opinion of Mr. Gann.[7]  Plaintiff asserts that as of April 19, 2005,

---

[6] Because Mr. Gann is not a medical source, the findings and conclusions contained in his PCE constitutes lay witness evidence, which nevertheless "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001); see also 20 C.F.R. § 404.1513(d) (defendant may use evidence from other non-medical sources to show severity of claimant's impairments and how those impairments affects his or her ability to work).

[7] Because Mr. Gann is not an "acceptable medical source" as that term is defined in the Social Security Regulations, his findings and opinion may be given less weight than those of acceptable medical sources. See Gomez v. Chater,

ORDER - 21

Dr. Nehls "was still reporting [him as being] unable to work." ECF #13, p. 16.  While this may be as Mr. Gann reported at the time (see AR 204), as discussed above, by early April 2006, Dr. Nehls found plaintiff would be able to engage in full vocational rehabilitation in accordance with the light to medium level of work parameters noted in the early March 2006 PCE.  Thus, the Court finds that had the ALJ specifically addressed Mr. Gann's PCE in his decision, it is highly unlikely that he would have assessed plaintiff with more severe functional limitations than he did or come to a different disability determination.

V.    The Hypothetical Question the ALJ Posed to the Vocational Expert

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e).  The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids").  Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).  The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).  Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted).  The ALJ, however, may omit from that description those limitations he or she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

---

74 F.3d 967, 970-71 (9th Cir. 1996); 20 C.F.R. § 404.1513(a), (d) (licensed physicians and licensed or certified psychologists are "acceptable medical sources").

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity. <u>See</u> AR 56-57.  In response to that question, the vocational expert testified that an individual with those limitations – and with the same age, education and work experience as plaintiff – would be able to perform other jobs. <u>See</u> AR 56-59.  Based on the testimony of the vocational expert, the ALJ found plaintiff would be capable of performing other jobs existing in significant numbers in the national economy. <u>See</u> AR 28-29.  Plaintiff argues the hypothetical question the ALJ posed to the vocational expert did not take into account all of his physical and mental functional limitations.  But because as discussed above, the ALJ did not err overall in his evaluation of the medical and other evidence in the record – and thus in assessing plaintiff's RFC – the Court finds nothing improper in the hypothetical question the ALJ posed.

<u>CONCLUSION</u>

Based on the foregoing discussion, the Court hereby finds the ALJ properly concluded plaintiff was not disabled.  Accordingly, defendant's decision to deny benefits is AFFIRMED.

DATED this 28th day of August, 2012.

Karen L. Strombom
United States Magistrate Judge

ORDER - 23